Oral argument, 15 minutes per side. Ms. Lloyd, for the appellants. Good morning, your honors. Paula Lloyd, assistant city attorney for the defendants. I have reserved five minutes for rebuttal. In response to defendants assertion of qualified immunity, plaintiff offered no evidence to dispute the defendant officers on the scene observations and the totality of the circumstances that informed each officers decision to use deadly force. There was no discussion among the officers prior to the uses of deadly force. Each officer made his decision based on the totality of the circumstances known to him. Defendants appellate brief and reply present the particular circumstances that informed each defendant officer's decision and it's based on these totality of these undisputed circumstances that the question of whether a reasonable officer could respond with deadly force is a question for the plaintiff. The answer to whether a reasonable officer could respond with deadly force sitting in the shoes of, standing in the shoes of any of the individual defendants is yes. Defendants are entitled to qualified immunity. Now in this case, plaintiff failed to introduce any evidence to dispute that the consistent testimony of each officer that he perceived the threat of serious harm to the individual defendant's life. There is no dispute in this case that if Mr. Bynum had been able to shoot, he posed a threat of serious harm to the officers and anyone within shooting range. The issue is not whether he was confined or stuck in his car or whether or not he could flee. No officer ever testified that that was the threat that he posed. Didn't Judge Marbley make a finding that there was disputed evidence in this case? And that's why he didn't give the qualified immunity. As we argued in our brief, Your Honor, Judge Marbley indicated several things in his decision. He mentioned that he perceived there were some factual differences. Our argument is he didn't, he did not identify, plaintiffs did not identify any genuine dispute of fact, any material fact that was in dispute in this case. More the materiality than the genuineness. I agree, Your Honor. It's a blend of both. The materiality I suppose we can consider, but genuineness at this stage we cannot. As we have argued, Your Honor, materiality is in itself an issue of law and that is certainly our argument in this case. There are, as we have argued, there are also some issues that present whether or not they're actually genuine because it's a misstatement of the record. I think in this case one of the critical things, which I don't believe was recognized in the district court's decision, was how critical the timing is in this case. I mean, 20-20 hindsight, as the Supreme Court has said, carries great weight when the events in question happen very quickly. In this case the cruiser video, which carries the time that is expiring at the bottom of the frame, doesn't leave any doubt as to the rapidly evolving events and the timing of this. It doesn't leave any doubt as to which officers are shooting in the first and second volleys. In answer to your earlier question, it is true that the district court did confuse in its decision who was shooting and there is no confusion as far as that factual presentation. Ms. Lloyd, I think the question you're being asked, if I can help you out here, is are we bound by the district judge's conclusion that there were genuine issues of material fact that would preclude jurisdiction? Oh, no. As far as in terms of the jurisdictional question, the district court's designation something of a fact is not determinative of whether or not we are entitled to review. We have presented several questions from a jurisdictional standpoint that qualify as legal error. Among those, the failure of the district court to apply an individualized analysis of qualified immunity. I'd be interested to hear what opposing counsel has to say, but that would seem to be just flatly inconsistent with our case law. Not your statement, but the failure to do an individualized analysis. That's one point, but as this court has held in chapel, it's not the district court's designation of something that is a fact that is determinative. You have to look beyond that in the totality to see if actually there was a proper application of the burden of proof, which we also argue was not applied in this case. We do believe that the district court gave the plaintiff the benefit of inferences that weren't supported by the record and that that denied defendants the, what it did was eliminate plaintiff's burden to defeat defendants' qualified immunity. Let's get back on track to where we were. If we're not bound by the judge's determination that there were genuine issues of material fact, then your argument is we are entitled to and presumably bound by looking at what are the allegedly disputed facts. Yes, Your Honor. You say there aren't any because you agree with all the facts, but there may be disagreements about the conclusions one draws from the facts. Is that a correct statement of where we are? I believe so, Your Honor. What's difficult about this case is some of the so-called facts that the court indicated as factual disputes were not in dispute. I mean, the court indicated it was a dispute as to whether or not Mr. Bynum could flee. That's not a dispute of fact, nor was it ever. The district court indicated that defendants were arguing it was reasonable for them to shoot a man who was unconscious. Those are not the facts. So that's my dilemma. Let me try again. Is there any fact that the plaintiff is alleging in this case with which you disagree for purposes of qualified immunity, as opposed to the legal conclusions one draws from that constellation of facts? Your Honor, I don't know what fact the plaintiff is alleging here. The plaintiff is relying on the facts that defendants presented. The plaintiff hasn't alleged any affirmative evidence or facts to dispute what the plaintiff is saying. The plaintiff has theories and speculation, but the plaintiff doesn't have any facts. So the answer is no, you don't know any facts? I don't have any facts that I'm aware of that the plaintiff is presenting. If we move on, then, to whether the officers' actions were reasonable, whether they reasonably perceived a threat to themselves or others. The basic argument is this can't possibly be reasonable because they shot what turned out to be an unarmed man trapped in his car. That's the claim. So is it reasonable to shoot an unarmed man trapped in his car? Your Honor, the problem with that is the facts in this case show the fact that he is trapped in his car is not material. The threat that he poses is the threat of shooting from the car, which there is absolutely nothing to dispute he was capable of shooting from the car. Had he been able to shoot, he posed a threat. That's the threat. The fact that he's in his car is not material. The issue of his being unarmed, the fact that there is no gun in the car, even plaintiff's expert concedes, is not known to defendants until after the event is over. There's no question that based on Mr. Bynum's actions, the defendants perceived reasonably that he had a gun in his cupped hands and was aiming prepared to shoot. Those are the undisputed facts. So to say that can you shoot an unarmed man in a car, that's not an accurate characterization of the issue that is before this court. Incomplete, I guess you would say. Pardon? That's an incomplete characterization, perhaps. I mean, he was unarmed, you know. He's unarmed, but no one shoots him knowing he's unarmed, so that's not really the issue. The other question that I want to ask you, and in part I want to hear what you have to say, but I'm also alerting your fellow counsel, I'm going to ask him too. I've watched the dashboard tape. The whole incident, from the crash to the shooting, is really a horrifying thing to watch. But what I want you to focus in on is the first time the police officers come up to the car, just before the first volley of shots ring out, they clearly all jump back. Something has startled them or made them concerned about something. That's where I was going, Your Honor. Then they come back up closer to the car a second time, and all of a sudden they all jump back again a second time. So what do you say the evidence shows as to why they were taking those actions just before the first volley and just before the second volley? Okay, I will try to do that, Your Honor. Let me just preface this too by saying, I think because he was the closest to the car and is present for both volleys, if you look at Defendant Yinger's testimony, he gives perhaps the best sequence of that. But let me address that. It's 15-59-15 when they approach the car. In that 12 seconds frame that you're talking about, you've got the officers approaching the car, initially he appears unconscious. You see them jumping back from the car at 15-59-53. The testimony is, while he initially appeared unconscious, it's then that he starts to move. The testimony is that what happens then in the next 12 seconds after that 15-59-53, they are giving him commands to show his hands, to keep his hands in view. If you look at O'Donnell's testimony, he's looking at his face. He's looking at him that way. His eyes are open. In that time, he makes a movement. We've given the testimony of O'Donnell and Yinger that he makes an abrupt movement of his hands. It's described differently by Yinger and differently by O'Donnell from their different perspectives, but they don't shoot with that first movement. Again, that's the second moving back. They tell him, don't do it. They're giving him commands. They are desperately trying to see what's in his hands, and he does not keep his hands in sight. He doesn't put them on the steering wheel. He doesn't keep them up in the air. They can't see his hands. The testimony is undisputed. He's leaning forward in that time, in the seconds that you're talking about, the 12 seconds. He's leaning forward to his right, which is the center console area, towards the area between the driver's seat and the console, somewhere down the floor. Again, described somewhat differently from different vantage points. Leaning that way, and then the first volley at 16,0006. That's 13 seconds after he began moving, and they were giving him commands to which he didn't respond. That's when he makes that abrupt gesture that they described. He's down dramatically, as Yinger described it. Comes up, swings his arms counterclockwise with his hands cupped out through. If you look at, it's exhibit D of the sealed exhibits that we filed, some of the enlarged. I don't know if you had time to look at those, but the photographs that we have of the car. It's a little easier to understand this when you realize the driver's side door's not closed. This car was severely damaged in the collision, and the door's mangled. It's hanging off, so they can see him from the waist up. The window's not there. He swings his arms around, and he's breaking that plane. It's like they're across where the window would be. Testimony's undisputed that he has that aim on O'Donnell. That's what they perceive, and that's what causes that almost immediate first volley of shots. The only two who are firing in that first volley are Yinger and O'Donnell. I think you've answered the question. Okay, and that first volley of shots lasts three seconds. I'm sorry. I'm suggesting you look down at your light. Okay, I'm sorry. May it please the Court, Counsel. My name is Eric Holloway, and I represent Catherine Pollard, the appellee. We ask this Court to affirm the trial court below. There are three reasons to support that affirmance request. First, disputed material facts preclude summary judgment, for any reason in this case to include for qualified immunity. Second, the police officers today are impermissibly seeking a factual review of the record on qualified immunity, which is an interlocutory appeal, and that's not permitted by case law. Finally, qualified immunity is not available for police officers who say, show me your hands, and then shoot the suspect when the suspect moves to comply with the order. Let's start with number one and two. Absolutely. They're really related. I have to tell you that I've combed this record carefully, and I can't find any facts that are actually disputed, or put another way, that the police do not accept as true that you're alleging. Lots of different conclusions that the two of you draw from the facts, but just point out what fact is disputed. Yes, Your Honor. The officers contend that when this suspect extends his hands, cupped, through the window pane of the broken door, that set of cupped hands constitutes a threat to their safety. Our police practices expert, Colonel Genota, testified that... See, here's the problem. You're launching right off into a conclusion. If you said there's no evidence that he had his hands cupped, looking like he was making a shooting motion, that's a dispute of facts. But there is no evidence as to what really happened in this car immediately before the shooting, aside from what the police officers say. And so it seems to me we start from the proposition of what the police officers say because there is no other evidence, and then we look to see what conclusions you draw from that. I understand why you'd say you can't shoot somebody just because they're cupping their hands. Okay, that's a legal issue. But is there a fact dispute about what actually happened here? Yes. Based upon the forensic evidence, it is a dispute on the plainest part that Abram Bynum was able to move in the manner suggested by the police officers. The district court below indicated that there were some self-serving statements submitted by the defendants as part of the case below. One example of that is Officer O'Donnell, who said that he saw an object in the hand of the decedent, Abram Bynum. Another... How can there be a genuine dispute about whether he could move when you see on the tape that people jump back? So obviously something happened that caused them to jump back. And then most importantly, there's the unbiased witness that says that he heard them yelling at him, drop it. Now why would anybody be yelling drop it if somebody can't move? Because they're making an assumption that he had something in his hands. Let me ask you this question. It is undisputed, right, that he... I'm sorry, is it undisputed? It is undisputed. I just want... I'm just asking if you can confirm that it is undisputed that he points his cupped hands out the window. That's undisputed, right? I know that's the evidence, the affirmative evidence in the record by the police officers. Right. You're not arguing the contrary, right? I'm arguing that I should be offered the opportunity to present to the jury forensic evidence that suggests he was not able to engage in that movement. Because we know from... What evidence do you have in support of that? Just point us to something... The autopsy report, Your Honor, not to cut you off, I apologize. The autopsy report shows pre-shooting injuries. That is because of the collision. It's clear in the autopsy report. The coroner said there are injuries to the sternum and to the left ribs. There are two broken ribs. That's the direction that the decedent moved before the shooting, supposedly. And we contest that the jury should hear... Just wait a minute. We forget the jury's... Well, that's the source of the dispute, Your Honor, the autopsy report to answer. So do you... I know you have an expert in this case, maybe two. Have they looked at the autopsy report and said they are going to testify that based upon the autopsy report, this guy couldn't move? The two experts we have do not address the autopsy report. When I talk about the autopsy report, it's my understanding that we have the coroner available to testify as to the results found and recorded in the autopsy report. Okay. Is there something in the record that indicates that the coroner will testify that based upon this autopsy report, this guy couldn't move? Not directly, no. I understand you want to make the argument, but I'm just asking if you can point to where what I would say is an argument is supported by any facts. The fact is the coroner observed these injuries in this man and recorded them. And the coroner... Now, if there is a photograph, which is what your opposing counsel says, of this guy's hands up pointing out the window, does that not absolutely... If that's true, does that not absolutely refute the argument that you want to make? No, because there are three movements that the police officers report from Abram Bynum during this set of events. The first movement is what startles the officers and puts them into a heightened state of alert initially after they had been casually walking around the crashed Cadillac. There's also, before the first volley, the allegation that this man was able to move in a similar but more dramatic fashion where he actually cupped his hands as if holding a firearm. And then, after the first volley, we know Officer O'Donnell, who was in the 11 o'clock position, shot his rifle, and he's the only one who had a rifle. He shot seven times, as I recall the record. And there are bullet wounds in the left side of Abram Bynum's body that can only be there if he's turned back to his right, putting up his left arm in a protective measure such that some of the rifle wounds can enter his left upper arm and also enter his left shoulder. Officers are taught if you see a threat, and they're saying they did, and we dispute it, you shoot until you eliminate the threat. This is excessive force, Your Honors, but they eliminated the threat. They continued to shoot at this unarmed man when he had given up in the first volley. All right, let me stop you there for a second. Yes, Your Honor. And I want to redirect you so we don't spend all of our time on that. Watching the tape, this volley of shots, at least the first one, all from start to finish take place in an incredibly short period of time. So you're saying that one or more police officers should have stopped shooting earlier. Is that the argument? That's one of the arguments, yes. Now, when we get to the second volley, again, the shots from start to finish seem to, again, take place in a very, very short period of time. So are you making that argument then, or are you saying that there shouldn't have been a second volley? The latter, Your Honor. And may I address a point the Court may, please? That you say are in dispute other than this question about could he move? Yes. And what are they? Can I ask a question? Sure. Absolutely. Before we move off that. It seemed to me that Judge Marbley took it as part of the fixed, factual scenario. I mean, qualified immunity, we look at the evidence and the light most favorable to the plaintiff, and then the Court makes a determination based on those kind of assumed facts, whether the officers have immunity. It seemed to me that those assumed facts for Judge Marbley included the movement with the cupped hands. Yes. So, I mean, you would agree with that? I agree that's what the Court found below. And I agree that is a disputed material fact, whether it's reasonable or reckless on the officers to presume that constituted a threat. Right. That's the issue, right? Yes, Your Honor. Okay. I just wanted to be clear, because, I mean, so that is something we have to consider as part of the assumed factual scenario in our decision here, that he moves with the cupped hands. Yes, Your Honor. I appreciate your straightforward answer. I'm just making it clear, I have a dispute as to whether that happened based on the forensic evidence. I understand. As to each volley. Anything then other than Yes, Your Honor. Again, the District Court below, I believe, correctly noted that the issue is whether these officers acted reasonably or recklessly. And in part of the analysis of that, we would submit that testimony from Colonel Genota, our police practices expert, shows that it is unreasonable for these officers to have shot at this person doing so 80 times and because he thought or they thought he had a cupped set of hands. Cup hands to Colonel That's not a fact dispute. If you said if there was a dispute about how many times they shot him, that's a fact dispute. Right. If there was a dispute about did he cup his hands, that's a fact dispute. Your expert is disagreeing with the conclusions the city would draw and the police officers drew from those facts. Right. So, facts. Anything other than the ability to move? The other argument we would submit, at least I understand it as a disputed material fact, is whether these officers should have converged on the Cadillac as they did. Colonel, excuse me, Commander Tilton of the Columbus Police Division testified that at least prior to the first volley he would have had only two officers go to the Cadillac to secure it and more important the driver inside. We're just not communicating. How can that possibly  of a fact decision? If there was a dispute as to how many officers actually did converge, okay, that's facts. How many should have, that's a conclusion. Okay. Do you see the difference? Yes, Your Honor, I do and I appreciate your patience with me. Okay. And I didn't hear your question. I understand. I mean, you're just making an argument that that was... Yes. And what I would like to do for the sake of brevity is just note, we made these points in our brief. We listed the District Court's areas of disputed material facts. We maintain those as disputed material facts and I would like to move on to my second point to ask for affirmance of the trial court below and that is, in this case, we are on interlocutory appeal where the police officers are engaging in an impermissible review of the factual record. They point out in their brief that there are misstatements by the District Court. There is one  immediately and one is dealing with whether Officer Estep shot in the first or second or both volleys. Officer Estep says that he shot only in the second volley and that was based upon testimony from a  I think it is his title, Yinger. Why does that matter to the immunity analysis? I mean, it matters perhaps if we do an individualized analysis as to him but why does that affect anything here? Your Honor, it is my understanding that this interlocutory appeal is available only if we are looking at purely legal issues. I am just pointing that out as an error. Okay. But we do have jurisdiction. Let's say they accept everything except one fact that really doesn't matter. We can still decide the immunity question based on the facts apart from the one they are disputing, if you follow me. I follow. I believe I follow. I didn't say it that well. And what I would submit is we do have a challenge to the evidentiary record but the court is able to, as I understand the case law, to look at only the legal issues presented on this appeal. And in light of that fact, what I would like to do in the remaining time that I have is address why qualified immunity is not available for these officers. Before you do that, let me ask  question. Do you think judges are required to do an individualized inquiry into the availability of qualified immunity? I believe that's the case law, yes. And I think that happened here. Now, how do we affirm this decision when there does not appear to have been any individualized inquiry? Your Honor, I ponder that myself and what I understand is there's a common set of facts that are applicable to each defendant that makes it possible to look at these same set of facts and say each of these officers engaged in this conduct and if we're looking at qualified immunity for one, you're looking at qualified immunity for them all because they share this common nucleus of fact. In particular, we know that these officers came on scene aware that this man had been involved in a horrific head-on collision at highway speed with a semi-tractor trailer truck and probably was not in a frame of mind even after he first awoke to be fully cognizant as we are all today at this very moment in time. That could make him more or less dangerous. Absolutely. So it's a concern. But it's also a reasonable concern. And I think the general officer, I would submit, could understand that maybe he's not complying with an order because he's under medical duress. But I would submit that, at least as I understand sort of this assumed  the officers don't shoot because of his failure to show his hands. It's actually the opposite. They shoot because he does show his hands in a manner that suggests he's going to shoot them. In a light view, most favorably to the non-movement, I submit this court has to look at that movement of his hands as a compliance with the order. The order is show your hands. It's not slowly show your hands. It's not show your hands one at a time and then the other. It's show your hands. They didn't clarify. They shot this man to death. But are you really saying that if somebody takes an action that's compliant with an order, i.e. shows your hands, if the person did show his hands in a manner suggesting he was going to shoot him, that they can't take defensive action at that point because he's only complying with their order? Is that really what you're arguing? I don't think I follow that. I'm saying there's no gun. There's no excuse me. You seem to say that they gave him an order and he complied with it so it was not reasonable to shoot him. Is that a fair synopsis? Yes, because a sample versus Bailey. I'm just following up on that by saying are you really saying that if in complying with the order, i.e. show me your hands, he did show him his hands in a way that suggested he was going to shoot him, that they can't act because that was in compliance with their order? Cup hands aren't a weapon. It's not reasonable to think cup hands can shoot a person. How can we say that a reasonable officer in this split second would know that they are just cup hands? There are small handguns that aren't much bigger than somebody's hand. This happens so fast. How can we say a reasonable officer has to know or should know that it was just cup hands that are in motion coming towards them rather than hands that had cup hands that also had maybe a small pistol? Sample versus Bailey decided by this court in 2005 says when you tell a suspect move your hands and there's movement that's consistent it's unreasonable to think that next hand movement isn't correct. Let me ask you this question. I understand your argument on that point. Isn't there a world of difference? The universal compliance gesture for show your hands is this. It's not this. There is a world of difference between having your hands apart and just putting them up and cupping them, rotating and pointing at an officer. As a practical matter, isn't there a world of difference between that? Those officers are the masters of their order and they're dealing with a person who's under medical duress and a universal statement is a nice way of saying something. When a judge is asking you a question, would you please stop and listen to the question? Yes, Your Honor. Thank you. Just as to those two different movements, there's a big difference, isn't there? I mean, isn't that fair? No. That's not fair? No, because of the fact that this man was under obvious medical duress because of the head-on collision he had just had with the semi-tractor trailer truck. The officers did not clarify their order as to how the hands were to be shown. Okay. I appreciate your straightforward answer. Let me follow up on that one too that I've forgotten and now I just recall. I think it's Judge Marbley that uses the word or the phrase cupped hands. And in looking at the record, if I recall right, that's not a phrase that anybody else used. If the officers had said, well, he cupped his hands. I mean, I would guess cupping your hands is sort of like this. It seems to me they didn't say that. They said he clasped his hands in a shooting gesture. Now, this may seem insignificant, but is there a distinction between what the officers testified about clasping in a shooting gesture versus then paraphrasing that as cupped hands? Because it seems to me they carry significantly different potentially legal ramifications. I have to agree with the court. The district court said cupped. And I recall Detective Unger in his deposition saying clasped. And I believe there's another officer who testified as if holding a gun. I don't remember. Your position would be, based on your exchange with Judge Kethledge, that whether it's cupped or clasped in a shooting motion doesn't matter because that was compliance with the order. Is that it? Yes. Under the circumstances. Okay. Any other questions? Thank you, Your Honors. And I apologize for... You don't have to apologize about my question. Thank you, Your Honors. Thank you. Thank you, Your Honor. I just have a couple points I want to clarify or emphasize based on what counsel was saying. Obviously, we've already discussed there is a burden on the plaintiff's part to respond when a qualified immunity is asserted. And in this case, plaintiff did not, in response to the assertion of qualified immunity, come forward with any forensics evidence, any medical evidence. What about Mr. Holloway's point about the pattern of wounds on the decedent? Your Honor... The back of the arm. I mean, you're familiar with this point. I'm familiar. I wanted to... I know you addressed it in your brief. We did. What's your response to what he had to say? At page 52, if we're talking about the injuries that were incurred in the collision first... I'm not talking about those. Okay. He says that the pattern of wounds from the officer who shoots with a rifle shows that he was not oriented in a way that he could have been threatening the officers. First, I would disagree with that, Your Honor. That's what I'm asking. Second, I would also make the point that there is no forensics or ballistics evidence to even establish what that pattern would be, what the trajectory would be, where a person's arm would be such that a person   his arm around. That's not an expert opinion. There's nothing inconsistent with saying you were swinging your arms around and your arm is shot. Actually, his hand is shot also. But there's nothing to say that an individual can't swing his arm around. That's not the ballistics and the forensics and medical evidence. It was at page 52 that we did recognize the Fairfield County coroner saying that he actually introduced this. The coroner ruled this as suicide saying the bullets first the injuries from the car accident and then the bullets were not inconsistent with what the officers were saying. That was plaintiff who put that into the record. There was no other evidence from any coroner. I am interested in something that your answer just popped into my mind. At first the plaintiff's claim is this man was incapable of moving. But then the argument is he concedes that he showed his hands but the argument is it was in compliance with the officer's commands. Those two things are obviously inconsistent. Now you add the additional fact if true that one of these shots hit him in the hand. Is that true? I'm not sure it was a rifle shot though. We were talking more about the rifle itself. I didn't say rifle. I said is it correct that a shot apparently hit him in the hand. Is it conceivable under the facts as you understand them because you've explained the door was open, could that be explained away by the fact that they were shooting through an open door and his hands were down or is the only conclusion one could draw that his hands must have been up or don't you know? I do know. I know this much. It wasn't our burden and we didn't  worry about that. I wanted to emphasize because I didn't get to this part as far as the second volley. That was very quick and it was five seconds in duration. This court has recognized that certainly the amount of force which is used you have to recognize that a reasonable officer would have to have time to recalibrate his decision as to the amount of force and where this is happening so rapidly we don't have that situation where an officer within that three seconds could recalibrate the use of force or the five seconds. That's all. Thank you  Thank you. We will go through the record again carefully in light of the arguments made on both sides here this morning. The case will be submitted. Please adjourn the court.